[No. C008373. Third Dist. Nov. 22, 1991.]

DORIS PARISH et al., Plaintiffs and Respondents, v.
JEFFREY D. PETERS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

204

**COUNSEL**

Diepenbrock, Wulff, Plant & Hannegan, Charity Kenyon, Karlen D. Harmison, David J. Bills and Gregory G. Snyder for Defendant and Appellant.

Thomas L. Upholt for Plaintiffs and Respondents.

## OPINION

**SPARKS, Acting P. J.**—In this case we confront a conundrum created by the interplay of various provisions of the Code of Civil Procedure governing the contents of complaints, the service of process, and the methods of obtaining a default judgment. Under the express statutory scheme, there is no provision for a defaulting defendant in a personal injury action who had been served by publication to be subsequently served with a statement of the damages sought by the plaintiff. The trial court found this lack of express statutory directive for such a statement to be determinative and consequently ruled that failure to serve a statement of damages did not entitle the defendant to relief from default.

In the published portion of this case, we hold that the proper service of a statement of damages or its equivalent, although not expressly required by statute under these circumstances, is compelled by due process.[1] In the absence of the proper service of such a constitutionally required notice, the court lacks jurisdiction to enter a default judgment. We further conclude that a prayer in the complaint for "compensatory damages according to proof" fails to give the requisite notice and hence cannot act as a substitute for a separate notice of damages. Accordingly, the judgment must be reversed.

### BACKGROUND

For purposes of the published portion of this opinion, our factual focus is narrow. In May 1987, plaintiffs Doris and Harold Parish, Jr., filed their form complaint in the superior court for personal injury, property damage, and loss of consortium allegedly resulting from a motor vehicle accident occurring 364 days earlier. The plaintiffs prayed for compensatory damages "according to proof." Almost two years later, in February 1989, the plaintiffs filed an ex parte application for an order permitting service of process by publication. (Code Civ. Proc., § 415.50 [subsequent undesignated section references are to this code].)[2] The court issued the order, and the summons appeared in The Daily Recorder, a newspaper of general circulation for Sacramento County, on four consecutive Fridays in March 1989.

---

[1]In the unpublished portion of this opinion, we find service by publication was proper, and conclude the trial court did not abuse its discretion in denying the defendant's motion under Code of Civil Procedure section 473.5 for relief from default.

[2]The statute provides in pertinent part, "A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article . . . . [¶] The court shall order the summons to be published in a named newspaper . . . that is most likely to give actual notice to the party to be served . . . ." (§ 415.50, subds. (a) & (b).)

On August 21, 1989, the plaintiffs filed a request for a court judgment.[3] (§ 585, subd. (c).) Under the heading "Statement of damages ([§] 425.11)," the plaintiffs claimed $1,790 in special damages and $40,000 in general damages. They also sought $198 in costs. Ten days later, the plaintiffs filed an application for a default judgment, set for September 7. (§ 587.) The application once again sought damages in the sum of $41,790, together with costs of $198. Attached to this application was a proof of service by mail on the defendant at an address in Rancho Cordova, California. Following a hearing at which plaintiff Doris Parish testified, the court entered a default judgment on October 17, 1989, in the amount claimed in the application.

Although the particular vehicle by which the defendant sought relief is ultimately irrelevant, we note the defendant initially moved in January 1990 to quash the summons for failure to publish it in a newspaper most likely to give him actual notice (§ 418.10), to set aside the default for lack of actual notice without inexcusable neglect or avoidance of service (§ 473.5), and to set aside the default under the general relief statute (§ 473). The motion appended his proposed answer. The court denied the motions. The defendant next moved to set aside the judgment (invoking § 473) on the specific ground the plaintiffs did not serve the section 425.11 statement of damages on the defendant more than 30 days before the request for a default judgment, at which point they sent one to an incorrect address. He again appended his proposed answer. The court once more denied the motion: "[Defense counsel], you're asking the Court to invalidate the default judgment on the ground that no statement of damages was served. The law does not require it."

The defendant now appeals from the default judgment and the two orders entered after judgment denying relief from judgment. He claims the judgment is void either for failure to serve a statement of damages or because service by publication was improper. He further claims the trial court abused its discretion in failing to set aside the default under section 473.5 because he did not attempt to evade service, and was not guilty of inexcusable neglect. In the published portion of this opinion, we limit our consideration to his claim that the judgment was invalid because he was not served with a statement of damages pursuant to section 425.11.

---

[3]In point of fact, the plaintiffs also checked off the responses on the Judicial Council form (see West's Cal. Forms (1991 ed.) form 982(a)(6), p. 7 [Request for Entry of Default]) that requested entry of a clerk's default, and the trial court's deputy clerk did so on that day. As we shall see, this clerk's default is a superfluity in actions premised on service by publication. (3 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1990) Default, § 56.7, p. 56-8.)

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

 Defendant contends that the default judgment entered against him is void because plaintiffs failed to serve him with a statement of damages as required by section 425.11. Plaintiffs counter that such a statement is not required when service has been made by publication.

A.

 The starting point for our analysis is section 580, which states quite simply, "The relief granted to [a] plaintiff, if there be no answer, cannot exceed that which [is] demanded in [the] complaint . . . ." As the Supreme Court held without qualification in *Greenup* v. *Rodman* (1986) 42 Cal.3d 822 [231 Cal.Rptr. 220, 726 P.2d 1295], "in all default judgments the demand sets a ceiling on recovery." (*Id.* at p. 824.) In its overview of section 580, the high court stated the statute should be "strictly construed" so that any default judgment in excess of the amount specifically demanded is void as extra-jurisdictional. (*Id.* at p. 826.) "The notice requirement of section 580 was designed to insure fundamental fairness. Surely this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability." (*Ibid.* [internal quotation marks deleted].)

Section 580 constitutes a statutory expression of the mandates of due process, which require "formal notice of potential liability." (42 Cal.3d at p. 826; accord, *Petty* v. *Manpower, Inc.* (1979) 94 Cal.App.3d 794, 798 [156 Cal.Rptr. 622] [California has codified constitutional protection of notice].) Those mandates also require that the form of substituted service be "reasonably calculated to give [the defendant] actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice [citation] implicit in due process are satisfied." (*Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283,, 61 S.Ct. 339, 132 A.L.R. 1357].) Thus, the statutes "permitting a personal judgment to be taken by constructive service of summons against a resident who cannot, after due diligence, be found within the state, or who conceals

*See footnote, *ante,* page 202.

himself to avoid the service of summons is not violative of constitutional due process." (*Miller* v. *Superior Court* (1961) 195 Cal.App.2d 779, 785-786 [16 Cal.Rptr. 36] [italics omitted].) Due process then remains the "paramount concern" regardless of any other policy which might be furthered if the notice requirement were to be relaxed. (*Greenup, supra*, 42 Cal.3d at p. 828.) Nor does the worthiness of the defendant enter into the due process calculus: "We conclude that due process requires notice to defendants, whether they default by inaction or by wil[l]ful obstruction, of the potential consequences of [their] refusal to pursue [a] defense." (*Id.* at p. 829.)

In the ordinary course of events, the limitation in section 580 on the amount of the judgment in absence of an answer does not pose a problem for plaintiffs, since section 425.10 requires, if "the recovery of money or damages be demanded," that "the amount thereof shall be stated . . . ." (*Id.*, subd. (b).) However, in 1974 the Legislature amended the statute with respect to personal injury and wrongful death actions. It now provides that a complaint filed in superior court "to recover actual or punitive damages for personal injury [shall not state] the amount thereof . . . ." (*Ibid.*) This amendment was intended to protect defendants from inflated demands resulting in adverse publicity, particularly in medical malpractice cases. (*Schwab* v. *Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 431 [280 Cal.Rptr. 83, 808 P.2d 226].) Simultaneously, section 425.11 was added, which provides, "When a complaint . . . is filed . . . for personal injury . . . the plaintiff *shall give notice to the defendant of the amount of special and general damages sought to be recovered* . . . before a *default* may be taken . . . ."[7] (Italics supplied.) The defendant is then accorded a "reasonable" amount of time to respond (or not) to the statement of damages before the default may be entered. (*Schwab, supra*, 53 Cal.3d at p. 435; *Connelly* v. *Castillo* (1987) 190 Cal.App.3d 1583, 1589-1590 [236 Cal.Rptr. 112].) Section 425.11 "removes the anomaly between section 580 and section 425.10." (*Petty, supra*, 94 Cal.App.3d at p. 798.) Thus, assuming a plaintiff complies with these pleading requirements, the Legislature has made provision for the notice required by due process in all instances.

---

[7]Section 425.11 reads in its entirety: "When a complaint or cross-complaint is filed in an action in the superior court to recover damages for personal injury or wrongful death, the party against whom the action is brought may at any time request a statement setting forth the nature and amount of damages being sought. The request shall be served upon the plaintiff or cross-complainant, who shall serve a responsive statement as to the damages within 15 days thereafter. In the event that a response is not served, the party, on notice to the plaintiff or cross-complainant, may petition the court in which the action is pending to order the plaintiff or cross-complainant to serve a responsive statement. [¶] If no request is made for such a statement setting forth the nature and amount of damages being sought, the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered (1) before a default may be taken; or (2) in the event an answer is filed, at least 60 days prior to the date set for trial."

However, the symmetry of this scheme is thrown asunder by a discordance in the several subdivisions of section 585, the statute which governs the procedures for obtaining a default judgment, in light of the specific wording of section 425.11 ("the plaintiff shall give notice . . . before a *default* may be taken"). (Italics supplied.) Subdivision (a) of section 585 applies "[i]n an action arising upon contract or judgment for the recovery of money or damages only, if the defendant has . . . been served, *other than by publication* . . . ." (Italics supplied.) If so, upon written application of the plaintiff the clerk "shall enter *the default* of the defendant . . . and immediately *thereafter* enter *judgment* . . . ." (*Ibid.* [italics supplied].) Subdivision (b) of section 585 applies "[i]n other actions, if the defendant has been served, *other than by publication* . . . ." (Italics supplied.) Again, upon written application of the plaintiff, "the clerk . . . shall enter *the default* of the defendant. The plaintiff *thereafter* may apply to the court for the relief demanded . . . ; the court shall . . . render judgment . . . for such sum . . . as appears . . . to be just." (*Ibid.* [italics supplied].) As can be seen, both of these subdivisions are predicated upon the entry of a default.

However, subdivision (c) of section 585 does not require the entry of a default when service was accomplished by publication. Instead, a judgment is simply entered. Thus, under subdivision (c) of section 585, which applies "[i]n all actions where the service of the summons was by publication," the plaintiff may move in writing for judgment. ██ "The court shall thereupon require proof . . . and may render *judgment* . . . ."[8] (Italics supplied.)

 This leaves us with an odd conundrum. Defendants who have been served, and thus have actual notice of a personal injury complaint, must be given actual notice of the amount of damages sought before a *default* may be taken (which is then followed up by proof of damages and actual entry of judgment). On the other hand, since by its terms section 425.11 is a prerequisite only to a "default," and not a default judgment, the defendant with no formal notice of a personal injury action other than by publication (which may be no notice at all) does not appear to be entitled by statute to have notice of the amount of damages at issue served upon him, since under section 585 a default is not a prerequisite to judgment in such cases.

[8]As Witkin explains, "[i]f the defendant fails to answer within the necessary time, his 'default' may be entered. Up to the time of such entry, he may ordinarily file his belated pleading. But the entry of default cuts off that opportunity, and, unless vacated, permanently precludes the filing of an answer. [¶] After a default is entered, the case stands with an unanswered complaint, on which ordinarily the plaintiff is entitled to a 'judgment by default' or 'default judgment.' This judgment is distinct from the default. . . . The *clerk* always enters the *default* (except where service is by publication). . . ." (6 Witkin, Cal. Procedure (3d ed. 1985), Proceedings Without Trial, § 217, pp. 524-525.)

As we have recited, the trial court was untroubled by this legislative scheme, correctly noting there was no express statutory requirement for service of prejudgment notice of damages to a defendant served by publication. Were this simply a matter of statutes, we would agree. But as we noted at length in the outset of this discussion, the due process concerns enshrined in our constitutions—concerns which are fundamental to all precepts of jurisprudence (*Burtnett* v. *King* (1949) 33 Cal.2d 805, 808 [205 P.2d 657, 12 A.L.R.2d 333]) and codified in section 580—forbid a judgment against a defendant in excess of that demanded in the complaint without any formal notice of an increase of the amount in issue. Thus, to protect the due process rights of defendants while allowing personal injury plaintiffs to seek default judgments against runaway defendants, we must hold as a matter of constitutional law that the equivalent of a section 425.11 statement of damages be served in the same manner as a summons prior to entry of a default judgment against a defendant served by publication.[9] (Cf. *Wiley* v. *Rhodes* (1990) 223 Cal.App.3d 1470, 1473 [273 Cal.Rptr. 279] [where complaint precluded from stating amount of punitive damages (§ 3295, subd. (e)), plaintiff must furnish notice of amount of damages before default even though no explicit statutory provision for such]; *Ely* v. *Gray* (1990) 224 Cal.App.3d 1257, 1263-1264 [274 Cal.Rptr. 536] [a notice analogous to statement of damages required in action for an accounting even where not required by statute].) This protection of a defendant's due process rights does not work any particular hardship on a plaintiff burdened with an absent defendant. As in *Plotitsa*, which imposed the requirement of personal service of the statement of damages, "Plaintiffs have the same protection as exists with service of summons on original complaints. Sections 415.20 and 415.50 provide for substituted service and service by publication if reasonable diligence in

---

[9]Section 425.11 requires notice "of the amount of special and general damages sought to be recovered." "General damages are those which necessarily follow from the injury inflicted on the plaintiff, and are implied by law to have thereby accrued to him, although they need not always result from the commission of a particular wrong. Special damages, on the other hand, are those actually sustained by the plaintiff, and are not implied in law." (23 Cal.Jur.3d, Damages, § 19, p. 29 [fns. omitted].) In personal injury actions, general damages include "physical pain and mental suffering, sickness, loss of earning capacity and of [spouse's] services." (5 Witkin, *op. cit. supra*, Pleading, § 884, p. 325.) In contrast, medical expenses and loss of profits of a business, as distinguished from loss of earning capacity, constitute special damages. (*Id.*, § 885, p. 326.)

In *Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755 [189 Cal.Rptr. 769], the court held that a standard form request to enter default indicating the total "damage of complaint" as $250,000 served by mail was defective for two reasons. First, it was served by mail at the defendant's last known address rather than served in the manner prescribed for service of summons on original complaints. (*Id.* at pp. 760-761.) Second, it failed to comply with the requirement of section 425.11 to specify both the special and the general damages. (*Id.* at pp. 761-762.)

We need not decide in this case whether the demands of due process similarly require that the notice of damages sought must be separated into the general and special components.

effecting personal service is not successful." (140 Cal.App.3d at p. 761.) Thus, service of the statement, upon proper showing, can be made by publication upon the defendant originally served by publication.

The plaintiffs rely on *Candelaria* v. *Avitia* (1990) 219 Cal.App.3d 1436 [269 Cal.Rptr. 32]. There the defendant in a personal injury action fled and was later served by publication. The defendant never appeared. Her insurance companies quibbled over whether they were obligated to cover the accident since it was the result of a "business pursuit" in the defendant's home. Meanwhile, the plaintiffs entered a default judgment against her. (*Id.* at pp. 1439-1440.)

The *Candelaria* court first held section 425.11 inapplicable. (219 Cal.App.3d at pp. 1440-1442.) As we have noted above, this is entirely correct under the express wording of the statute. However, to the extent the court's analysis in this context is being used to suggest due process does not require an *equivalent* nonstatutory notice to defendants served by publication, we decline to join it. That serving such a statement on an absent defendant might be an "idle act" (Civ. Code, § 3532)[10] does not excuse giving the notice; otherwise, there would be no point in the initial service by publication of the original summons. Service by publication may not impart actual notice, but it is the best that due process can exact under the circumstances. Nor is it determinative that sections 425.10 and 425.11 were designed to protect a defendant from embarrassment. In the first place, absent defendants bring about the publication by their own actions; thus we should not be too concerned with their "embarrassment." More importantly, as we earlier noted, the high court in *Greenup* has explicitly stated due process is the preeminent consideration, which consequently must triumph over protection from obloquy.

The *Candelaria* court then looked to section 585's asymmetrical subdivisions in support for its conclusion that no notice of damages need be given the absent defendant. The court correctly concluded the difference in the wording must be given significance with respect to the need or not for a default prior to judgment. (219 Cal.App.3d at p. 1443.) However, we disagree that the difference in phrasing in the three subdivisions of section 585[11] evinces a legislative intent that a plaintiff is not limited to the amount claimed in the complaint where service has been by publication, and that this

---

[10]This section forms a part of that pithy segment of the Civil Code known as the Maxims of Jurisprudence, which in this provision states, "The law neither does nor requires idle acts."

[11]To quote the portions of the statute on which *Candelaria* relied, subdivision (a) of section 585, dealing with an action on contract or a judgment for money or damages, directs the clerk or judge to "enter judgment for the principal amount demanded in the complaint . . . ." Under subdivision (b) of that section, dealing with other actions, the court shall "render

can be justified because "defendant's whereabouts are unknown." (219 Cal.App.3d at p. 1443.) We cannot ascribe a meaning to the statute which would be in derogation of due process. While the *Candelaria* court states this is "no less protection than that which [a defendant] receives under the outright default procedure, because the requirement of hearing permits the court to scrutinize the evidence and limit plaintiff's recovery to what the evidence permits" (*id.* at pp. 1443-1444), this misconstrues the due process concern at work. It is not that we wish to ensure that the evidence supports the judgment,[12] but rather—as expressed in *Greenup*—that we want to enable "a defendant to exercise [the] right to choose—at any point before trial, even after discovery has begun—between (1) giving up [the] right to defend in exchange for the certainty [of liability] for . . . a known amount, and (2) exercising [the] right to defend . . . ." (42 Cal.3d at p. 829.) Furthermore, saying the absent defendant is accorded no less protection ignores the basic distinction between the default situation and a defendant served by publication; the former does require notice to the defendant of the amount of damages before damages are adjudicated, which satisfies due process.

The other two rationales advanced by the *Candelaria* court (219 Cal.App.3d at p. 1444) cannot excuse giving notice to the defendant of damages. As we explain more fully in the next paragraph, the fact that section 587 requires an affidavit stating the plaintiff has served a copy of the application for default or default judgment upon the defendant at his last known address does not satisfy due process; this is not the type of service required for the section 425.11 statement of damages (or the equivalent required by due process). Finally, application of the California Constitution's standard of harmless error (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] ) has no application where we are considering a judgment rendered extrajudicial for want of due process. Thus, the *Candelaria* decision is of no succor to the plaintiffs.

Turning to the case before us, it is readily apparent the plaintiffs have not satisfied the dictates of due process. Prior to requesting that judgment be entered against the defendant on a personal injury complaint which states no amount of compensatory damages, they made only service by mail to the

judgment . . . for such sum (not exceeding the amount stated in the complaint) as appears by such evidence to be just." Finally, under subdivision (c), governing service by publication cases, the court "may render judgment for the amount which [the plaintiff] is entitled to recover."

[12]Indeed, in *Greenup*, there was a "prove up" hearing (42 Cal.3d at pp. 825-826), but that did not cure the due process flaw of lack of notice of the maximum amount of damages to which the defendant could be exposed. While the *Candelaria* court found *Greenup* to be inapposite because it did not involve a defendant served by publication (219 Cal.App.3d at p. 1442), this factual distinction does not affect the principles of due process announced in *Greenup*, merely the manner in which they are to be applied in a particular circumstance.

Rancho Cordova address. As we recounted, this was neither defendant's dwelling house, his usual place of abode, nor his usual place of business. Section 587 directs in relevant part that "an application for judgment under subdivision (c) of Section 585 shall include an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record or, if none, to the defendant at his or her last known address and the date on which the copy was mailed. If no such address of the defendant is known to the plaintiff or plaintiff's attorney the affidavit shall state that fact." The mailed application in this case, as noted in our facts, listed the total amount of damages and costs sought. This was not sufficient.

In *Plotitsa, supra,* 140 Cal.App.3d 755, 759, the court noted that amendments to civil complaints, which increased the amount of damages sought, must be personally served upon a "nonappearing" defendant before default may be entered against that defendant for the increased amount. (*Ibid.*; see also *Engebretson & Co.* v. *Harrison* (1981) 125 Cal.App.3d 436 [178 Cal.Rptr. 77].) The *Plotitsa* court then "concluded that a 'statement of damages' under section 425.11 is the functional equivalent of an amendment to a complaint that increased the amount of damages sought. Accordingly, the same considerations requiring personal service must apply." (140 Cal.App.3d at p. 759; see also *Petty, supra,* 94 Cal.App.3d at p. 798.)

By a parity of reasons, even if the application for a default judgment under section 587 could be construed as the functional equivalent of a statement of damages under section 425.11, that application would also have to be served in the same manner as a summons. (See §§ 415.10-415.40.) Because no such service occurred here, we need not decide whether plaintiffs exercised reasonable diligence to ascertain defendant's correct mailing address. (See *Slusher* v. *Durr* (1977) 69 Cal.App.3d 747, 755 [138 Cal.Rptr. 265].)

Since defendant was not properly served with a statement of damages or its equivalent, plaintiffs can prevail here, if at all, only by virtue of the notice imparted by the complaint.[13] We therefore turn the issue of whether the complaint in this case adequately imparted notice of the amount of damages sought.

As we have just explained, neither the mailed copy of the application for default nor the fact there is a "prove up" hearing is sufficient to satisfy the

[13]It is true, of course, that it was the summons and not the complaint which was published. As we have noted in the margin, under the publication statute, the court must "order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. . . ." (§ 415.50, subd. (b).) Nevertheless, defendant is chargeable with constructive notice of the contents of the complaint when, as here, the service by publication was proper.

defendant's due process right to choose to defend. Consequently, the judgment is void to the extent it exceeds the amount demanded in the complaint. (§ 580; *Schwab, supra,* 53 Cal.3d at p. 433 ["As a general rule, a default judgment is thus limited to the damages of which the defendants had notice."].) We must now determine the extent to which the instant defendant has received constructive notice of damages from the complaint, which requires us to view *Greenup* through the lens of *Schwab*.

## B.

Originally, the high court drew a bright-line rule for the requisite notice of damages: a specific amount of damages must be averred, either in the prayer or in the body of the complaint. "If no specific amount of damages is demanded [in the prayer], the prayer cannot insure adequate notice of the demands made upon the defendant. Consequently, a prayer for damages according to proof passes muster under section 580 only if a specific amount of damages is alleged in the body of the complaint." (*Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 [165 Cal.Rptr. 825, 612 P.2d 915] [citations omitted].) This bright line was somewhat dimmed in *Greenup*. There the plaintiff alleged causes of action for "fraud and conspiracy to defraud, concealment of assets, breach of fiduciary duty, conversion, and intentional infliction of emotional distress," and claimed damages " 'in a sum that exceeds the jurisdictional requirements of this court.' In her prayer, however, the only specific sum requested was $100,000 in exemplary and punitive damages: all other damages were to be 'subject to proof at time of trial' or 'as the court deems just.' " (42 Cal.3d at p. 825.) After determining it was improper not to give the defendant formal notice of the amount of damages sought before taking a default judgment, the court stated, "[W]e conclude that the award must be amended to conform to the limitations specified in section 580. Defendants argue that because plaintiff stated no amount of damages in her prayer, she is entitled to no compensatory damages whatever. In *Becker*, however, we specifically held that the allegations of a complaint may cure a defective prayer for damages. [¶] Each of plaintiff's causes of action, with the exception of her personal injury claim, concluded with the allegation that she suffered damage 'in an amount that exceeds the jurisdictional requirements of this court.' Plaintiff brought her action in the Los Angeles Superior Court, which is a court of limited jurisdiction . . . [, where] the amount in controversy [must exceed] $15,000.[14] By her allegations, plaintiff thus gave sufficient notice to defendant that she claimed at least $15,000 in compensatory damages. While an award in excess of $15,000 would be improper, a judgment in that amount

---

[14]The jurisdictional floor of the superior court was raised to $25,000 in 1985 (§ 86; Cal. Const., art. VI, § 10; see Stats. 1985, ch. 879, § 1, p. 2822 and ch. 1383, § 1, p. 4903.)

was within the jurisdiction of the court. The compensatory award should therefore be reduced to the extent that it exceeds $15,000. [¶] . . . For the reasons given . . . the award of punitive damages must be reduced to the amount of $100,000 pleaded in the complaint." (*Id.* at pp. 829-830 [citations deleted].)

This *Greenup* holding was recently refined in the *Schwab* case. "We determined in *Greenup* . . . that a plaintiff's complaint claiming general damages 'in an amount that exceeds the jurisdictional requirements of this court' provided the defendant notice that the plaintiff was seeking general damages of at least $15,000—the jurisdictional minimum of the court in which she appeared. . . . [¶] . . . While we did award the plaintiff the jurisdictional minimum in general damages in *Greenup*, the facts in that case differed substantially from the facts before . . . us today." (*Schwab, supra,* 53 Cal.3d at p. 433.) A subsequent case, *Morgan v. Southern Cal. Rapid Transit Dist.* (1987) 192 Cal.App.3d 976 [237 Cal.Rptr. 756], "interpreted *Greenup* to hold that *all* defendants should be presumed to be on notice of the plaintiffs' claim for general damages of at least the jurisdictional minimum regardless of the form of complaint. The case before us, however, shows the flaw in this reasoning: plaintiffs' claim for $500,000 in punitive damages in itself properly put this case before the superior court. Because plaintiffs' claim for punitive damages had already established the superior court's jurisdiction, neither a [layperson] nor an experienced attorney could be presumed to know the amount of general damages plaintiffs were seeking in this case." (*Schwab, supra,* 53 Cal.3d at p. 434 [italics in original and citations omitted].) The *Schwab* court also suggested constructive notice of damages based on a court's jurisdictional floor was contrary to section 425.11's explicit requirement a defendant be given notice of general and special damages. (53 Cal.3d at p. 434.)

After the *Schwab* court disapproved *Morgan* (53 Cal.3d at p. 434), it considered the complaint before it. "In this case, the fact that defendants had notice of plaintiffs' prayer for statutory damages in an amount according to proof but 'no less than $250'[15] and punitive damages in the amount of $500,000 is not sufficient to meet the requirements of section 425.11." (*Id.* at p. 435.) The court therefore held the judgment was properly vacated in its entirety.

The complaint in the present action "is on one of the skelet[al], preprinted forms supplied by the Judicial Council, with boxes to be checked for the

---

[15]The plaintiffs had filed for damages under Civil Code section 54.3 (treble actual damages with a minimum of $250) for a violation of Civil Code section 54.1 (mandating that guide dogs cannot be a basis for denying housing accommodations). (*Schwab, supra,* 53 Cal.3d at p. 430.)

appropriate allegations." (*Lopez* v. *Fancelli* (1990) 221 Cal.App.3d 1305, 1308, fn. 4 [271 Cal.Rptr. 87].) In the body of the complaint, captioned "Personal Injury, Property Damage, Wrongful Death," the plaintiffs alleged, by checking the appropriate boxes, they had suffered wage loss, hospital and medical expenses, property damage, loss of use of property, general damage, loss of earning capacity and loss of consortium. No dollar amount was assigned to any of these kinds of damages. In the cause of action for loss of consortium, plaintiff Harold Parish alleged that he was deprived of the consortium of his wife, all to his damage "according to proof." The prayer of the complaint similarly failed to specify any dollar amount of damages. Stripped of its boxes, the prayer reads: "Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for compensatory damages (Superior Court) according to proof." (Capitalization omitted.)

Under *Greenup* and *Schwab*, this is insufficient to give the requisite notice of the amount of damages claimed. In order to meet the notice requirements imposed by due process, a plaintiff must either give notice of the damages claimed in a separate statement of damages or by the allegations of the complaint. To pass constitutional muster, the complaint must either allege a specific dollar amount of damages in the body or prayer or at the very least allege the boilerplate damages are "in an amount that exceeds the jurisdictional requirements" of the superior court. An allegation seeking damages "according to proof" fails to fulfill the mandate of section 425.11 or of due process. After all, a "defendant is entitled to actual notice of the liability to which he or she may be subjected, a reasonable period of time before default may be entered." (*Schwab, supra,* 53 Cal.3d at p. 435.)

The fact that plaintiffs' complaint also alleged that "[r]elief sought in this complaint is within the jurisdiction of this court" does not change this result. Such a general jurisdictional allegation does not give notice of the actual amount of damages sought by the plaintiff. Nor is it equivalent to a prayer for general damages "in an amount that exceeds the jurisdictional requirements" of the superior court. The *Greenup* court reasoned that by such a prayer for excess damages, "plaintiff thus gave sufficient notice to defendants that she claimed at least $15,000 in compensatory damages." (42 Cal.3d at p. 830.) Here in contrast, plaintiffs' prayer sought damages only "according to proof." This fails to provide proper notice of the amount of damages sought. (*Schwab, supra,* 53 Cal.3d at p. 435.) Although the allegations of a complaint may cure a defective prayer for damages (*Becker, supra,* 27 Cal.3d at p. 494), the allegation in the body of this complaint did not allege any specific amount of damages. Indeed, it did not even explicitly use the term "damage." Instead, it merely asserted that the relief sought, whatever that was, fell within the jurisdiction of the court. This nebulous assertion does not meet the minimum due process standards for notice of the

damages sought. To rule otherwise would be to assert that defendants are chargeable with constructive notice of the jurisdictional minimum of damages in all cases, an assertion expressly rejected by the *Schwab* court.

■ Because plaintiffs' complaint sought only unspecified damages, it could not serve the function of a statement of damages. (*Hamm* v. *Elkin* (1987) 196 Cal.App.3d 1343, 1347 [242 Cal.Rptr. 545].) And because defendant did not receive the proper notice of the amount of damages sought, the default judgment cannot stand.

## Disposition

The judgment is reversed. Defendant is awarded his costs on appeal.

Sims, J., and Davis, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 27, 1992. Mosk, J., and Panelli, J., were of the opinion that the petition should be granted.